UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**HALINA BIERNACKI, Individually and as Executrix of the Estate of David Street,**

                                      **Plaintiff,**                      11-CV-973(Sr)

v.

**UNITED STATES OF AMERICA,**

                                      **Defendant.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #29.

Currently before the Court is defendant's motion for summary judgment (Dkt. #147); plaintiff's motion for summary judgment (Dkt. #154); and plaintiff's motion to strike Dr. Sellick's declaration (Dkt. #159). For the following reasons, defendant's motion for summary judgment is granted; plaintiff's motion for summary judgment is denied; and plaintiff's motion to strike is denied.

## BACKGROUND

Plaintiff, Halina Biernacki, proceeding *pro se*, commenced this medical malpractice action pursuant to the Federal Tort Claims Act, alleging that her 88 year-old husband, David Street, received inadequate medical treatment at the VA Western New

York Health Care System following his ingestion of fresh spinach contaminated with E. coli 0157:H7,[1] resulting in his death on October 22, 2006.  Dkt. #1. Plaintiff complains that defendant failed to perform tests to identify the particular strain of E. coli affecting Mr. Street, thereby overlooking the risk of Hemolytic Uremic Syndrome ("HUS"), an extremely rare cause of kidney failure.  Dkt. #1.  As a result of their failure to test for the E. coli strain, plaintiff alleges that Mr. Street received inappropriate medical treatment which aggravated his condition and that the diagnosis and treatment of the resulting HUS was delayed.  Dkt. #1.  Plaintiff alleges that if defendant had followed the standard of care set forth by numerous regulatory agencies, including advice to test for the E. coli strain and regulations requiring reporting of communicable diseases, he would have received appropriate treatment and survived his illness. Dkt. #1.

John A. Sellick, Jr., D.O., is employed as a hospital epidemiologist by the Department of Veterans Affairs' Western New York Healthcare System ("VA WNY"), and Kaleida Health.  Dkt. #149, ¶ 1.  Dr. Sellick is also an Associate Professor in the Division of Infectious Diseases at the State University of New York at Buffalo Medical School.  Dkt. #149, ¶ 1.  Upon review of Mr. Street's medical records, Dr. Sellick declares that Mr. Street was admitted to the VA WNY on September 14, 2006 with a diagnosis of renal failure and pneumonia and started on the recommended antibiotic, moxifloxacin.  Dkt. #149, ¶¶ 11 & 20; Dkt. #158, ¶ 51.  Dr. Sellick notes that plaintiff

---

[1] Dole brand Baby Spinach contaminated with E. coli 0157:H7 caused 205 confirmed illnesses and three deaths during the Fall of 2006. *See* http://www.fda.gov/newsevents/newsroom/pressannouncements/2007/ucm108873.htm

also presented with multiple denuded skin lesions on his lower extremeties.  Dkt. #158, ¶ 23.

Plaintiff's blood culture, which was taken upon admission and prior to the administration of antibiotics, tested positive for E. coli and Staphylococcus aureus, which commonly arises from skin lesions or intrabdominal sources and is appropriately treated with antibiotics.  Dkt. #149, ¶ ¶ 22 & 40 & Dkt. #158, ¶¶ 44-46 & 80.  Dr. Sellick opines that Mr. Street's E. coli bacterial infection very likely was due to an extra intestinal pathogenic E. coli ("EXPEC"), strain from one of his skin lesions, or possibly from his gallbladder or lungs. Dkt. #149, ¶ ¶ 32 & 39.  Mr. Street's E. coli and Staphylococcus aureus infection  resulted in multiple organ system failure, which caused his death on October 22, 2006. Dkt. #149, ¶¶ 24 & 57.

Dr. Sellick explains that E.coli 0157:H7 is a strain of SHIGA toxin producing E. coli ("STEC"),  also known as an enterohemorrhagic E. coli ("EHEC").  Dkt. #149, ¶¶ 34-35.  However, the STEC strain does not enter the bloodstream and  there is no reported case of E. coli 0157:H7 blood infection in the United States.  Dkt. #149, ¶¶ 37-38 & Dkt. #154-1, p.14.  Testing for STEC strains, including E. coli 0157:H7, are applied to bacteria that have been isolated from fecal specimens, not on bloodstream isolates of E. coli.  Dkt. #149, ¶¶ 43-44. Although plaintiff reported that Mr. Street had been suffering from, *inter alia*, diarrhea prior to his admission, medical records indicate that this symptom had resolved by the time of his admission.  Dkt. #149, ¶¶ 12, 16 & 46; Dkt. #158, ¶ 54.  Given that Mr. Street's diarrhea was short-lived and presumed to

be due to the oral antibiotic he received prior to his admission, Dr. Sellick declares that there was no medical indication to perform additional stool cultures to test for E. coli 0157:H7.  Dkt. #149, ¶ 46 & Dkt. #154-1, p.14.

In October of 2012, following the filing of plaintiff's complaint, the VA WNY obtained Mr. Street's blood isolates (which had been stored in a laboratory freezer in accordance with VA WNY's practice), for further testing to determine the strain of E.coli. Dkt. #149, ¶ ¶ 59-60.  Mr. Street's blood isolate fermented sorbitol.  Dkt. #149, ¶ 61. E.coli 0157:H7 is sorbital negative; it does not ferment sorbitol.  Dkt. #149, ¶ 62.  In addition, the VA WNY sent the blood isolate to Quest Diagnostics for further testing. Dkt. #149, ¶ 64. Because there would be no need to serotype a sorbitol positive strain, the VA WNY did not inform Quest that the specimen was sorbitol positive and Quest presumed that the specimen was sorbitol negative.  Dkt. #149, p.27.  Quest reported that the blood isolate was negative for  E.coli 0157:H7.  Dkt. #149, ¶ 65 & p.30.

## DISCUSSION AND ANALYSIS

**Motion to Strike**

Plaintiff moves to strike Dr. Sellick's declaration "because it does not appear to be written by witness and presented omissions, distortions, redundant, and is unauthorized."  Dkt. #159, ¶ 2.  More specifically, plaintiff appears to challenge Dr. Sellick's ability to proffer an expert opinion when he had no personal involvement with Mr. Street's treatment.  Dkt. #159, ¶¶  6 & 9.  Plaintiff also alleges that Dr. Sellick has misrepresented his professional experience. Dkt. #165, ¶ 30; Dkt. #167 & Dkt. #171

The admission of expert testimony in an action pending in federal court is governed by Rule 702 of the Federal Rules of Evidence, which provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, the trial court performs a gatekeeping function to ensure that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert v. Merrell Down Pharms, Inc*. 509 U.S. 579, 597 (1993). Assuming that an expert witness meets this criteria, the "expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Id.* at 592.

The Court is satisfied that Dr. Sellick's qualifications are sufficient to warrant his expert opinion as to the appropriateness of the care Mr. Street received during his hospitalization at the VA WNY. *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997) ("admission and qualification of experts . . . is in the broad discretion of the district court."). Moreover, Dr. Sellick's opinions are based upon a sufficiently reliable foundation, *to wit*, generally accepted diagnostic criteria and treatment protocol for bacterial infection, and is relevant to assessing the

appropriateness of the VA WNY's diagnosis and treatment Mr. Street's symptoms. Accordingly, plaintiff's motion to strike is denied.  Finally, the Court notes that Dr. Sellick's expert disclosure and declarations conform to this Court's administrative procedures for electronic filing and service of documents. *See* W.D.N.Y. Administrative Procedures Guide Rule 2(f) & (g).

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Federal Tort Claims Act**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). "In 1946, Congress adopted the FTCA which, subject to numerous exceptions, waives the sovereign immunity of the federal government for claims based on the negligence of its employees." *Coulthurst v. United Streets*, 214 F.3d 106, 108 (2d Cir. 2000). Specifically, the FTCA authorizes suits against the government to recover damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United Streets, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

To establish a claim for medical malpractice under New York law, a plaintiff must prove: (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused plaintiff's injuries. *Arkin v. Gittleson*, 32 F. 3d 658, 664 (2d Cir. 1994).  Unless the matter is within the knowledge and experience of an ordinary juror, New York law also requires the plaintiff alleging medical malpractice to provide expert medical opinion evidence with respect to each of these two prongs. *Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995).

Expert testimony is clearly required in this matter - ordinary jurors cannot be expected to understand distinctions among E. coli strains and the appropriate treatment options for such strains.  Defendant's expert witness, Dr. Sellick, clearly explained that the presence of E. coli in Mr. Street's bloodstream would not warrant consideration that Mr. Street could be infected with E. coli 0157:H7 because that strain of E. coli does not infect the bloodstream.  Dkt. #149, ¶¶ 37-38.  Moreover, the VA WNY demonstrated through subsequent diagnositic testing that Mr. Street's blood isolate was negative for  E.coli 0157:H7.  Dkt. #149, ¶ 65 & p.30.  In addition, Dr. Sellick opined that the infection detected in plaintiff's blood, *to wit*, Staphylococcus aureus and E. coli, was appropriately treated with antibiotics. Dkt. #149, ¶ ¶ 22 & 40.

Plaintiff did not present an affidavit from a medical expert in opposition to defendant's motion for summary judgment, but she did disclose an expert witness, Jerry Bush, M.D., who is board certified in internal medicine, during the course of discovery and referred to his expert witness disclosure in her summary judgment papers.  Dkt. ##68-69 &

154. However, Dr. Bush's opinion that the care provided to Mr. Street fell below the acceptable minimum standards of medical care and caused Mr. Street's death presumes that Mr. Street was infected with E. coli 0157:H7 without providing any factual basis for that assumption. Dkt. #68.

As there is no evidence to suggest that Mr. Street was infected with E. coli 0157:H7, the VA WNY's failure to provide appropriate treatment for E. coli 0157:H7 cannot be a proximate cause of Mr. Street's deteriorating condition, and ultimate demise, as plaintiff alleges. Accordingly, defendant's motion for summary judgment is granted.
.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to strike (Dkt. #159), is denied; defendant's motion for summary judgment (Dkt. #147) is granted; and plaintiff's motion for summary judment (Dkt. #154), is denied.

**SO ORDERED.**

DATED:    Buffalo, New York
          March 6, 2014

                                                   **s/ H. Kenneth Schroeder, Jr.**
                                                   **H. KENNETH SCHROEDER, JR.**
                                                   **United Streets Magistrate Judge**